IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| BRANDY GWYNN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 24-cv-02622-BCL-tmp |
| | ) |
| | ) |
| THE DUFRESNE SPENCER | ) |
| GROUP, LLC, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Before the court is Defendant Dufresne Spencer Group's ("DSG") Motion for Summary Judgment, filed December 22, 2025.[1] (ECF No. 41.) *Pro se* Plaintiff Brandy Gwynn filed her response in opposition on January 20, 2026, and DSG filed their reply on February 3, 2026. (ECF Nos. 45, 49.) For the reasons below, the undersigned recommends that DSG's motion be granted.

### I.    PROPOSED FINDINGS OF FACT

#### A.    Undisputed Facts

Gwynn, who is African-American, was employed by DSG at its Ashley Furniture HomeStore in Cordova, Tennessee, as a Visual

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management of all pretrial matters for determination and/or report and recommendation, as appropriate.

Presentation Manager ("VPM") between April 17, 2023, and July 27, 2023. (ECF Nos. 41-2 at PageID 145, 150; 46 at PageID 424-26.) She was responsible for "maintaining tagging standards of products in the store, maintaining the floor design and placement of furniture and displays . . . , managing the overall appearance of the interior of the store, ensuring the store was presentable to customers . . . , and managing new inventory for placement within the store." (ECF Nos. 41-2 at PageID 146; 46 at PageID 424.) Throughout her employment, Gwynn's performance was evaluated by her supervisor, Santina Shook. (ECF Nos. 41-2 at PageID 146-47; 46 at PageID 425.) On multiple occasions, Gwynn's performance evaluations were scored lower than what was required by DSG. (ECF Nos. 41-2 at PageID 148; 46 at PageID 426.)

On July 17, 2023, Shook issued Gwynn two corrective actions, for poor performance and unexcused tardiness in the first half of July. (ECF Nos. 41-2 at PageID 149; 46 at PageID 424.) Following this, Gwynn received a "final written warning." (ECF Nos. 41-2 at PageID 149; 46 at PageID 426.) Despite this warning and the prior corrective actions, Gwynn arrived at work after her scheduled start time on July 21, 2023. (ECF Nos. 41-2 at PageID 150; 46 at PageID 426.) On July 25, 2023, Gwynn's performance was evaluated again and was scored lower than required by DSG. (ECF Nos. 41-2 at PageID 150; 46 at PageID 426.) Shook informed Gwynn that she was not sure if Gwynn would remain employed. (ECF Nos. 41-2 at PageID 150; 46

- 2 -

at PageID 426.) Two days later, on July 27, 2023, Gwynn's employment was terminated. (ECF Nos. 41-2 at PageID 150; 46 at PageID 426.) Following Gwynn's termination, Shook hired another individual, also African-American, to fill the VPM role.[2] (ECF Nos. 41-2 at PageID 151; 46 at PageID 427.)

## B.    Procedural Background

On September 4, 2024, Gwynn filed her complaint alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*[3] (ECF No. 1.) Using the form provided by the Clerk's office to assist *pro se* litigants, Gwynn alleges that she was employed at DSG's Ashley HomeStore at 2385 N. Germantown Parkway, in Cordova, Tennessee, and was unlawfully terminated. (Id. at PageID 1-2.) Gwynn filed the position statement DSG sent to the Equal Employment Opportunity Commission ("EEOC") on January 25, 2024, with her complaint. (Id. at PageID 14.)

---

[2]Gwynn admits that the person hired to replace her is a member of her same protected class. In their Statement of Undisputed Material Facts, DSG states: "After terminating Plaintiff's employment, Ms. Shook hired an African American to replace Plaintiff. (Shook Decl. at ¶ 19)." (ECF No. 41-2 at PageID 151.) In her response to DSG's Statement of Undisputed Material Facts, Gwynn states: "Admitted. Plaintiff disputes Defendant's implication that replacement by another African American forecloses a finding of discrimination under Title VII." (ECF No. 46 at PageID 427.)

[3]At that time, Gwynn also moved the court to proceed *in forma pauperis.* The undersigned granted Gwynn's IFP application on September 20, 2024.

In her complaint, Gwynn alleges that "there were disparities in treatment and opportunities between [her] and [her] white colleagues[.]" (Id. at PageID 8.) She asserts that her white colleagues were given extra time to complete assignments and were sent to set up a new store, while she was not. (Id.) The only other DSG employee that Gwynn mentions by name in her complaint is an "Alisha," who was a VPM at the Tupelo, Mississippi Ashley HomeStore. (Id. at PageID 7.) Gwynn alleges that Alisha, who is white, received a passing score on her performance evaluation and an accompanying bonus after sixty days of employment, which Gwynn alleges raises "questions about the circumstances surrounding the Tupelo showroom's condition prior to her hiring, especially considering the potential impact on her ability to attain a passing score within such a short timeframe." (Id.) Alisha's name is also mentioned in Gwynn's deposition transcript, where she is identified as the Tupelo VPM whom Gwynn shadowed.[4] (ECF No. 43 at PageID 210.) Although Gwynn testified that she believed she was discriminated against because she had a bigger workload than other VPMs and the other VPMs had more time, when asked what deadlines other VPMs had that were different that hers, she was unable to identify anything more than that Alisha "was able to take her time to get her store together[.]" (Id. at PageID 269-70.)

---

[4]In the deposition transcript, Alisha is spelled as "Alicia." (ECF No. 43 at PageID 210-11, 266-67, 269-71.)

**C.    DSG's Motion for Summary Judgment**

DSG filed their Motion for Summary Judgment on December 22, 2025. (ECF No. 41.) They argue that there are no material issues of fact warranting a trial because Gwynn cannot make out a *prima facie* case of race discrimination, and that even if she could, she has no evidence to show that DSG took any action against her because of her race. (Id. at PageID 128.) First, DSG states that Gwynn "has failed to proffer affirmative evidence establishing that she was qualified for her role or that she was treated less favorably tha[n] similarly-situated employees outside of her protected class." (Id. at PageID 138.) They assert that the reason Gwynn's employment was terminated was because she was repeatedly late to work and consistently exhibited poor performance in her role when evaluated. (Id. at PageID 134-35.) As to DSG's argument that Gwynn failed to proffer evidence that she was treated less favorably than a similarly-situated comparator, DSG argues that Gwynn has not identified any comparators. (Id. at PageID 139.) Further, they state that the individual hired to replace Gwynn was a member of the same protected class, which weighs against a finding of disparate treatment. (Id. at PageID 139-40.)

Next, DSG argues that even if Gwynn could establish a *prima facie* case of race discrimination, she has failed to present evidence that DSG's stated reasons for her termination—poor performance and attendance—were pretext for discrimination. (Id.

at PageID 140.) DSG states that Gwynn does not dispute that her performance was poor and that she was late to work several times. (Id.) They argue that these are legitimate and non-discriminatory grounds for adverse employment actions. (Id.) They state that no evidence in the record suggests that DSG's reasons for terminating Gwynn's employment lacked a basis in fact, were insufficient to warrant termination, or were not what motivated the decision to terminate Gwynn's employment. (Id. at PageID 141.) They argue that because of this, Gwynn's arguments that DSG terminated her employment for reasons other that poor performance and attendance are based on Gwynn's "own speculation and conclusory allegations, which are insufficient to defeat a motion for summary judgment." (Id.)

In her response in opposition, Gwynn claims that DSG does not dispute that she was qualified for her position and was treated less favorably than other similarly-situated employees, even though DSG plainly does dispute these elements in their motion. (ECF No. 45 at PageID 421.) She refutes DSG's argument that their reasons for terminating her employment were not pretextual. (Id. at PageID 421-22.) She states that she received two corrective action documents both labeled "[f]inal" within the span of a few days and argues that "[a] reasonable jury could find that issuing multiple 'Final' warnings simultaneously is inconsistent with a genuine corrective process and instead reflects a paper trail

created to justify termination." (Id. at PageID 421.) Gwynn argues that she was not given a chance to demonstrate improvement before she was terminated from her position and that because DSG's expectations for her were "vague, generalized, and lacked measurable benchmarks . . . [a] reasonable jury could conclude that Defendant's stated improvement plans were illusory and that termination was predetermined." (Id. at PageID 422.) Gwynn further argues that DSG's reasons for terminating her employment are not credible because "[t]he performance corrective action relies on generalized scorecard percentages without context, explanation, or evidence that similarly situated employees were treated the same" and "[t]he attendance corrective action aggregated alleged tardiness without addressing circumstance or consistency in enforcement." (Id.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Legal Standards

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Leath v. Collins, No. 25-1408, 2026 WL 228827, at *4 (6th Cir. Jan. 28,

- 7 -

2026). The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hightower-Mathis v. Nextcare Mich. Providers, PLLC, No. 25-1623, 2026 WL 126494, at *3 (6th Cir. Jan. 16, 2026). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991); Phippen v. Rutherford Cnty. Adult Det. Ctr., No. 3:24-cv-00781, 2026 WL 220826, at *2 (M.D. Tenn. Jan. 5, 2026), report and recommendation adopted sub nom. Phippen v. Rutherford Cnty., No. 3:24-cv-00781, 2026 WL 213671 (M.D. Tenn. Jan. 27, 2026). Rule 56(c) provides that a party must support an assertion of fact by citing to materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials[,]" or a party must show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

When analyzing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving

- 8 -

party. Huckaby v. Priest, 636 F.3d 211, 216 (6th Cir. 2011) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); Phippen, 2026 WL 220826, at *3. In doing so, the court may not make credibility determinations or weigh the evidence. Jordan v. Kohl's Dep't Stores, Inc., 490 F. App'x 738, 741 (6th Cir. 2012) (citing Anderson, 477 U.S. at 255); Harrell v. Equifax Info. Servs., LLC, No. 1:25-cv-01155, 2025 WL 3260516, at *1 (W.D. Tenn. Nov. 3, 2025), report and recommendation adopted, No. 1:25-cv-01155, 2025 WL 3258632 (W.D. Tenn. Nov. 21, 2025). Rather, it must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Block v. Meharry Med. Coll., 723 F. App'x 273, 277 (6th Cir. 2018) (quoting Anderson, 477 U.S. at 251-52); Harrell, 2025 WL 3260516, at *1.

**B.    Title VII Race Discrimination**

Title VII provides that it shall be unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" Laster v. City of Kalamazoo, 746 F.3d 714, 726 (6th Cir. 2014); see also Meadows v. Delta Air Lines, Inc., No. 25-1346, 2026 WL 242884, at *4 (6th Cir. Jan. 29, 2026). Claims of intentional discrimination brought under Title VII can be proven

through direct or circumstantial evidence. Meadows, 2026 WL 242884, at *4. "Where direct evidence is present, the jury need not draw any inferences to conclude that prejudice against members of a protected group motivated, at least in part, a challenged employment action." Id. Where, as in the present case, there is "only circumstantial [evidence], a plaintiff's claim is analyzed under the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)." Id. "Under McDonnell Douglas, the burden resides first with the plaintiff to show a prima facie case of race discrimination[,]" and if they "successfully prove[] their prima facie case, the burden then shifts to the employer to provide a 'legitimate, non-discriminatory explanation for its actions.'" Id. After the employer "provides such explanation, the burden then shifts back to the plaintiff to show pretext; meaning, that the employer's explanation was merely fabricated to hide an illegal motive." Id. To make out a *prima facie* claim of race discrimination under Title VII, a plaintiff must show that "1) [they are] a member of a protected class; 2) [they were] qualified for the job and performed it satisfactorily; 3) despite [their] qualifications and performance, [they] suffered an adverse employment action; and 4) [they were] replaced by a person outside the protected class or [were] treated less favorably than a similarly situated individual outside of [their] protected class." Laster, 746 F.3d at 727; see

- 10 -

also <u>Dixon v. Exel, Inc.</u>, No. 2:24-cv-1891, 2026 WL 592212, at *7 (S.D. Ohio Mar. 3, 2026).

## C.    *Prima Facie* Case

DSG argues Gwynn cannot make out a *prima facie* case of race discrimination because she was not qualified for her role and was not treated less favorably than similarly-situated employees outside of her protected class. (ECF No. 41 at PageID 138.) In her response, Gwynn does not identify any similarly-situated comparator. (ECF No. 45 at PageID 421.) Instead, she merely states in conclusory fashion that she satisfies all the elements of a *prima facie* case and that the "Defendant does not seriously dispute these elements." (<u>Id.</u>)

DSG argues that Gwynn was not qualified for her position because she "failed to take the few very fundamental steps necessary for her to learn the specific requirements of the role for which DSG had hired" her; however, the undersigned finds that there is at least some evidence (albeit limited) to the contrary. (ECF No. 41-1 at PageID 138-39.) Viewing the evidence in the light most favorable to the plaintiff, the undersigned cannot conclude that no reasonable juror could find that Gwynn was qualified for her position.

Nevertheless, the undersigned finds that Gwynn has failed to create a genuine issue that she was treated less favorably than a similarly-situated employee outside of her protected class. In

order to have done so, Gwynn would have needed to establish that, in all "relevant aspects," her employment conditions were "nearly identical" to those of a coworker who received more favorable treatment, when taking into account factors such as whether the coworker "(1) engaged in the same conduct, (2) dealt with the same supervisor, and (3) were subject to the same standards." Shivers v. Charter Commc'ns, Inc., No. 22-3574, 2023 WL 3244781, at *7 (6th Cir. May 4, 2023) (quoting Johnson v. Ohio Dep't of Pub. Safety, 942 F.3d 329, 331 (6th Cir. 2019)). Without identifying a comparator, a plaintiff cannot succeed at the summary judgment stage.[5] Jones v. Ann Arbor Pub. Schs., No. 21-1327, 2022 WL 4836421, at *4 (6th Cir. June 22, 2022); Nagarajan v. Hargrove, No. 3:16-cv-00495, 2020 WL 2537757, at *2 (M.D. Tenn. May 19, 2020).

Gwynn does not identify any similarly-situated employee in her response to DSG's Motion for Summary Judgment. At the summary judgment stage, "Rule 56 requires parties to support their factual assertions with admissible evidence." Gilmore v. Sgt. Blankenship, No. 3:18 cv 1489, 2019 WL 3821743, at *3 (N.D. Ohio Feb. 15, 2019), report and recommendation adopted sub nom. Gilmore v. Blankenship, No. 3:18 cv 1489, 2019 WL 3818686 (N.D. Ohio Aug. 14, 2019) (citing Fed. R. Civ. P. 56(c), (e); Viergutz v. Lucent Techs., Inc., 375

---

[5]A showing that she was replaced with an individual outside of her protected class could have provided an inference of discriminatory intent. Johnson v. Oakland Univ., No. 15-12482, 2018 WL 500289, at *6 (E.D. Mich. Jan. 22, 2018).

F. App'x 482, 485 (6th Cir. 2010)). Although Gwynn makes some general comments about unequal treatment in her complaint, "[s]tatements made in Plaintiff's [unsworn] Complaint . . . are not admissible evidence." Id. (citing Fed. R. Civ. P. 56(c), (e); Viergutz, 375 F. App'x at 485; United States v. Brown, 7 F. App'x 353, 354 (6th Cir. 2001)). And even if the allegations in the complaint were considered, those allegations would still be insufficient to establish her *prima facie* case. Similarly, the brief description of "Alisha" in the deposition testimony falls well short of creating a genuine issue as to her being a comparator. Gwynn does not cite to any evidence relevant to whether they engaged in the same conduct, dealt with the same supervisor, or were subject to the same standards. Rather than meeting her burden of identifying a comparator, Gwynn erroneously places the burden on DSG, arguing that DSG has "failed to produce evidence that similarly situated [VPMs] outside Plaintiff's protected class were disciplined or terminated under comparable circumstances." (ECF No. 48 at PageID 432.)

Gywnn "has not shown a comparator [and this] failure is fatal to [her] case[.]" Nagarajan, 2020 WL 2537757, at *2. Therefore, even viewing the evidence in the light most favorable to Gwynn, she cannot establish a *prima facie* case of employment discrimination. Since Gwynn cannot make out a *prima facie* case of Title VII race discrimination, the undersigned need not consider

whether DSG has provided a legitimate, non-discriminatory reason for terminating Gwynn from her position, or whether Gwynn created a genuine issue that the proffered reason is pretext for race discrimination.

## III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that DSG's Motion for Summary Judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

June 30, 2026
Date

## NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**